NOT DESIGNATED FOR PUBLICATION

No. 117,480

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DERON MCCOY JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed May 4, 2018.
Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant, and *Deron McCoy Jr.*,
appellant pro se.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek
Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., HILL, J., and WALKER, S.J.

PER CURIAM: Deron McCoy Jr. appeals from the district court's denial of his
motion for a new trial following the remand of this case by a panel of this court. In this
appeal, McCoy contends that he has new evidence—a witness who he argues he could
not have produced with reasonable diligence prior to trial—to justify a new trial. Based
on our review of the record, however, we conclude the purported newly discovered
evidence is not of such materiality that it would be likely to produce a different result
upon retrial. Thus, we affirm.

1

FACTS

The underlying facts of this case were set forth in McCoy's previous appeal:

"On March 22, 2011, McCoy phoned Leanna Daniels, the mother of his 6-month-old daughter A.M. During McCoy and Daniels' conversation, Daniels heard A.M. crying. Daniels asked McCoy why A.M. was crying, and McCoy told her to come to the hotel he was staying at to find out. Daniels and her friend Gwendolyn Roby then went to the hotel to pick up A.M. According to Daniels, McCoy asked her to come into his hotel room but when she refused he grabbed her by the hair. Daniels asserts that McCoy then told his sister, Kaneshia Spencer, who was also in the room, to 'come beat this bitch's ass.' It is unclear how, but Daniels was able to get away from McCoy. According to Daniels, McCoy flashed his gun at her as she was leaving the hotel room.

"While this was happening, Daniels' friend Roby was watching. When Roby realized McCoy was not going to give A.M. to Daniels, she called the police. Roby and Daniels told the police that McCoy was at a hotel with A.M. and Spencer, that McCoy would not give A.M. to Daniels, and that McCoy had a gun.

"Police were sent to the hotel at 4:38 p.m. The police tried to get McCoy to come out of his hotel room, but he refused. Several times McCoy yelled at the police to 'get back, get the fuck back.' The police eventually asked for help from the emergency response team (ERT). The ERT attempted to contact McCoy via a megaphone and by calling his cell phone every 60 seconds. When there was no sound or movement coming from the hotel room after 45 minutes, the police decided to forcibly enter the hotel room. The police entered McCoy's hotel room without a warrant at 9:05 p.m.

"The ERT entered the hotel room in a 'stack' formation, with Officer Darren Pickering entering first and Officers Corey Garber, Brice Burlie, Jeremy Hedges, and Brian Carey following behind Pickering. The ERT officers had their guns drawn as they entered the hotel room. As the ERT officers entered, they saw McCoy sitting on the bed holding A.M. in one arm while using her to cover his face and holding Spencer with the other arm. McCoy also had a gun in the hand of the arm wrapped around Spencer. According to the ERT officers, McCoy was alternating pointing his gun at Spencer and

2

pointing his gun at the police. At some point, McCoy lost control of his gun. Officer Hedges then grabbed McCoy's gun and removed it from the hotel room. Then, Officer Kramer Siemens pulled Spencer out of the hotel room and Officer Matt Trato grabbed A.M. and removed her from the hotel room.

"The police struggled to arrest McCoy. During this struggle, McCoy was put into a lateral vascular neck restraint (LVNR) twice. The police found a glass pipe containing methamphetamine and a scale inside the hotel room. The police also found a baggie containing cocaine and hydrocodone in McCoy's pocket.

"Following his arrest, the State charged McCoy with the following: six counts of aggravated assault on a law enforcement officer under K.S.A. 21-3411(a)(1), each severity level 6 person felonies; three counts of aggravated assault under K.S.A. 21-3410(a), each severity level 7 person felonies; one count of aggravated endangerment of a child under K.S.A. 2010 Supp. 21-3608a(a)(1), a severity level 9 person felony; one count of criminal possession of a firearm under K.S.A. 2010 Supp. 21-4204(a)(3), a severity level 8 nonperson felony; one count of possession of cocaine with intent to sell under K.S.A. 2010 Supp. 21-36a05(a)(l), a severity level 4 nonperson felony; one count of possession of drug paraphernalia with intent to use to package a controlled substance for sale under K.S.A. 2010 Supp. 21-36a09, a severity level 4 nonperson felony; one count of possession of drug paraphernalia with intent to use to introduce a controlled substance into the human body under K.S.A. 2010 Supp. 21-36a09(b)(2), a class A nonperson misdemeanor; one count of possession of hydrocodone under K.S.A. 2010 Supp. 21-36a06(a), a severity level 4 nonperson felony; and one count of possession of methamphetamine under K.S.A. 2010 Supp. 21-36a06(a), a severity level 4 nonperson felony. The State additionally charged McCoy with two counts of kidnapping under K.S.A. 21-3420(a), each severity level 3 person felonies, for the kidnapping of Spencer and the kidnapping of A.M.

"Before trial, McCoy phoned Daniels from the jail and asked her to lie about what had happened when she went to the hotel room. The State then amended the complaint and additionally charged McCoy with one count of solicitation to commit perjury under K.S.A. 2010 Supp. 21-3303(a) and K.S.A. 21-3805(a)(1), a severity level 10 nonperson felony. Also before trial, McCoy's attorney, Alice Osburn, filed several

3

motions, including a motion to dismiss based on the police officers' use of excessive force and a motion to suppress any evidence obtained by the warrantless entry of the police. The trial court denied the motion to dismiss. The trial judge's ruling on the motion to suppress is not in the record, although it seems that the trial judge and the parties proceeded as if the trial judge had denied the motion.

. . . .

"During McCoy's trial, the State had Daniels, Roby, and the 26 police officers testify about the events concerning McCoy's case. Many of the police officers testified about what they had seen and done after they entered the hotel room without a warrant. Moreover, Spencer was unavailable as a witness at trial, but several police officers testified about the statements she made while being removed from the hotel room. Osburn consistently objected to the admission of Spencer's statements.

. . . .

"The jury ultimately found McCoy guilty of kidnapping Spencer but not of kidnapping A.M, five of the six counts of aggravated assault on a law enforcement officer, and one count aggravated assault on Spencer, aggravated endangering a child, criminal possession of a firearm, possession of cocaine, solicitation to commit perjury, and possession of hydrocodone. McCoy was found not guilty of all other counts. The trial judge sentenced McCoy to 355 months' imprisonment, with his kidnapping, aggravated assault on law enforcement officer, and aggravated endangerment of a child convictions to be served consecutively.

"McCoy filed his notice of appeal in November 2012." *State v. McCoy*, No. 110,827, 2015 WL 3632037, at *1-3 (Kan. App. 2015) (unpublished opinion), *rev. denied* 304 Kan. 1020 (2016).

In his initial appeal, McCoy raised nine issues. A panel of this court rejected all but one of McCoy's contentions and affirmed his convictions. However, the panel found that the district court had erred by denying McCoy the right to represent himself during a

4

hearing on a motion for a new trial and at sentencing. *McCoy*, 2015 WL 3632037, at *22-23. Ultimately, the panel remanded McCoy's case to the district court for rehearing on the motion for a new trial and for sentencing. *McCoy*, 2015 WL 3632037, at *23. Thereafter, the Kansas Supreme Court denied a petition for review and a mandate was issued.

On July 15, 2015, McCoy filed a pro se motion for a new trial. In his motion, McCoy asserted that his sister, Kaneshia Spencer, had contacted him more than one year after the trial and she indicated she was willing to testify on his behalf. In particular, McCoy asserted that his sister would testify that she was not kidnapped nor did she ever believe she was in danger. McCoy argued that his sister's potential testimony constituted new evidence and that it would likely change the outcome of the trial.

At a hearing on the motion for new trial, McCoy represented himself. He called his sister as a witness and she testified that McCoy never placed her in danger. However, she also testified that she was not able to observe McCoy throughout the incident on March 22, 2011. In particular, she testified that McCoy was behind her and she was unable to see what he was doing when the police arrived at the hotel room. At the conclusion of the hearing, the district court granted leave to the parties to submit briefs on the issue and took the matter under advisement.

Subsequently, at a hearing held on October 28, 2016, the district court determined that McCoy had failed to establish that he could not have produced his sister as a witness by exercising reasonable diligence prior to trial. The district court also found the testimony presented by McCoy's sister at the motion's hearing to lack credibility. Furthermore, the district court determined that her testimony would not likely change the outcome of the trial. Accordingly, the district court denied the motion for new trial and resentenced McCoy to a controlling sentence of 335 months of prison time, with postrelease supervision of 36 months.

5

On appeal, McCoy contends that the district court erred by denying his motion for new trial. K.S.A. 2017 Supp. 22-3501 provides that a district court "may grant a new trial to the defendant if required in the interest of justice." As such, we review the district court's decision on a motion for new trial for an abuse of discretion. *State v. Williams*, 303 Kan. 585, 595, 363 P.3d 1101 (2016). Judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Warren*, 302 Kan. 601, 614, 356 P.3d 396 (2015). Moreover, McCoy bears the burden of demonstrating an abuse of discretion. See *State v. Laurel*, 299 Kan. 668, 676, 325 P.3d 1154 (2014).

To establish the right to a new trial based upon newly discovered evidence, a criminal defendant must establish:  (1) that the newly proffered evidence could not have been produced at trial with reasonable diligence; and (2) that the newly discovered evidence is of such materiality that it would be likely to produce a different result upon retrial. *Warren*, 302 Kan. at 615 (quoting *Laurel*, 299 Kan. at 676). In determining whether new evidence is material, the district court must assess the credibility of the newly proffered evidence. It is not the role of our court to reassess the district court's determination of credibility on appeal. *Warren*, 302 Kan. at 615-16.

Here, it is unclear from the record on appeal whether McCoy could have presented his sister's testimony at trial by exercising reasonable diligence. In light of the familial relationship between McCoy and Spencer, it seems likely that he could have been able to produce her as a witness either voluntarily or under subpoena. Regardless, we find that the district court based its decision to deny the motion for new trial primarily on the second factor. Specifically, the district court determined that the testimony of Spencer's sister lacked sufficient credibility to warrant a new trial and that even if presented it would have been unlikely that the jury would have reached a different result.

Even if we assume that McCoy met the first factor to establish that he was entitled to a new trial, we do not find that he satisfied the second factor. As indicated above, in determining whether newly discovered evidence is material, it is the role of the district court to assess the credibility of the newly proffered evidence. See *State v. Cook*, 281 Kan. 961, 993, 135 P.3d 1147 (2006). It is not the role of this court to reassess the district court's determination that the testimony proffered by McCoy's sister was not credible. See *Laurel*, 299 Kan. at 676-77 ("Zero credibility means zero materiality and zero chance that the outcome of a retrial would be different."). Based on our review of the record, we find that a reasonable person could have agreed with the district court's determination regarding Spencer's credibility.

Finally, even if the district court had found Spencer's testimony to be credible, we do not find that it would have been likely to produce a different result upon retrial. Although Spencer testified at the hearing on the motion for new trial that she never saw McCoy point a gun at her, she also testified that he was behind her when the law enforcement officers entered the hotel room and that she did not see what he was doing. In contrast, the State presented the testimony of several police officers at trial who had responded to the incident in the hotel room and testified that, when they entered the hotel room, they saw McCoy sitting on the bed holding the baby in one arm and holding Spencer with his other arm. They further testified that McCoy was holding a gun in the hand of the arm he had wrapped around Spencer and that he alternated between pointing his gun at Spencer and pointing his gun at the police officers. According to the testimony of the officers, they observed McCoy hold the barrel of the gun underneath Spencer's chin and later pointed at her chest.

We, therefore, conclude that the district court did not abuse its discretion in denying McCoy's motion for new trial.

Affirmed.

7